IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DARLENE MARK,

        PLAINTIFF,

VS.                                                    CASE NO.: 1:14-cv-422

NORTHERN NAVAJO MEDICAL CENTER
DR. CYNTHIA LEE OLSON, M.D.

        DEFENDANTs.

**COMPLAINT FOR MEDICAL NEGLIGENCE, NEGLIGENT HIRING, TRAINING AND SUPERVISION, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, AND PUNITIVE DAMAGES**

COMES NOW, the PLAINTIFF Darlene Mark, by and through her attorneys of record, THE LAW OFFICE OF RICHARD A. SANDOVAL (Richard A. Sandoval) and COLLINS & COLLINS (Parrish Collins) and for her cause of action, states as follows:

1.      PLAINTIFF Darlene Mark (hereinafter referred to as "PLAINTIFF") is a resident of the City of Denver, County of Denver, State of Colorado.

2.      Based upon information and belief, DEFENDANT Northern Navajo Medical Center, is not a qualified healthcare provider as defined by the New Mexico Malpractice Act.

3.      Based upon information and belief, DEFENDANT Dr. Cynthia Olson, is not a qualified healthcare provider as defined by the New Mexico Malpractice Act.

Upon information and belief, the DEFENDANTS were responsible for the care of Darlene Mark

4.      All acts complained of herein occurred in the City of Shiprock, County of San Juan County, State of New Mexico.

5.      Jurisdiction and venue are proper with this Court pursuant to N.M.S.A. § 38-3-1 (2012).

## STATEMENT OF FACTS

6. PLAINTIFF was a fifty-one year old single woman at the time of her injury.

7. Due to a history of depressio, multiple fibroids (leiomyomas) causing significan abnormal vaginal bleeding (Menormetorhaggia), anemia and severe cramping. PLAINTIFF underwent a Total Laparoscopic hysterectomy requiring several blood transfusions, by DEFENDANT on May 8, 2012.

8. During surgery, DEFENDANT noted that she examined the ureters and a cystoscopy was performed with dye, showing no leakage into the pelvis. She received 2 units of blood due to worsening anemia, and showed improvement.

9. No mention of a discussion for consent for the cystoscopy is mentioned in her record. In fact, there are notes on May, 21, 2012 that indicate the patient, Ms. Mark, may not have been notified of the complication after surgery.

10. Dr. Olson failed to visualize suture site properly, thus suturing the left ureter, causing subsequent ureteral rupture, strictures and permanent hydronephrosis of the left kidney.

11. On May 16, 2012, Ms. Mark was seen at the Montezuma Creek clinic for evaluation and placed on an antibiotic course of Bactrim for a suspected urinary tract infection.

12. On May 17, 2012, Ms. Mark had a sudden onset of incontinence with large amounts of urine coming out of her vagina. On May 20, 2012, she was seen in the Urgent Care of Northern Navajo Medical Center (NNMC) with a large amount of urine noted in the vagina on speculum exam. A Foley catheter was placed, but an equal amount of urine was coming out through the vagina as through the catheter.

13. On May 21, 2012, Dr. Olson saw Ms. Mark and a CT scan was performed. It is noted in those results that the distal end of the left ureter was spilling contrast into the pelvis,

draining into the vagina. It is also noted that the CT Scan showed bladder wall thickening and a definite ureterovaginal fistula tracking into the vagina.

14.     Over the following weeks, staff at NNMC and Dr. Olson attempted to set up a consultation at the University of Colorado Medical Center (UCMC) for evaluation of the ureter damage.  Ms. Mark went to Denver to await evaluation, but the appointment had not been set up. This resulted in prolonged pain, anxiety, delayed healing, continued incontinence and skin breakdown, with concerns of infection.

15.     At this time, Dr. Olson contacted University of New Mexico Hospital (UNMH) for a consultation.

16.     On May 30, 2012, Dr. Michael S. Davis at UNMH saw her.   She was Taken immediately for a cystoscopy, but did not find anything unusual with her bladder or urethra.  He admitted her and scheduled surgery the next morning.  Dr. Davis believed she had a ruptured ureter resulting in a fistula and urine draining into the vagina.

17.     Consequently, a cystoscopy with left retrograd pyelograph and left ureteroscopy with left ureteral stent placement with out strings was performed.  A left distal ureteral fistula was found that tracked to the baginal cuff.  Ms. Mark was discharged from UNMH with multiple antibiotics and a foley catheter  expecting to follow up in one month so the fistula would heal. She was informed of the potential of additional surgeries.

18.     On June 18, 2012 Ms. Mark contacted the UNMH with complaint of significant leakage and bladder spasms.  She was seen by Dr. Davis on June 26, 2012 and consequently, she was taken into the operating room for another cystoscopy, replacement of stent and noting that he found evidence of a left distal ureteral stricture with circumferential scarring.  She was discharged and sent home with

19. DEFENDANT failed to call in urology consult during surgery when she could not visualize suture site properly, causing subsequent ureteral rupture, strictures, and permanent hydronephrosis of the left kidney.

20. DEFENDANT NNMC failed to follow-up with the patient and University of Colorado Medical Center to ensure immediate evaluation of patient's needs. Over the following 10 days, this resulted in prolonged pain, anxiety and further tracking of the ureterovaginal fistula

21. The PLAINTIFF continues to experience negative physical consequences as well as detrimental economical deficits due to the DEFENDANTS' medical negligence.

## FIRST CAUSE OF ACTION

## MEDICAL MALPRACTICE AND NEGLIGENCE

22. PLAINTIFF incorporates by reference as fully set forth herein each and every allegation contained in Paragraphs 1 through 21 of this Complaint.

23. In undertaking the diagnosis, care and treatment of PLAINTIFF, DEFENDANTS were under a duty to possess and apply the knowledge, skill, and care that is used by a reasonably well-qualified healthcare provider in the same or similar circumstances.

24. DEFENDANTS breached their duties and were negligent in the management of the PLAINTIFF's health and safety, specifically, through the negligent performance of a surgical procedure. DEFENDANTS' negligence, errors, acts and omissions include, but are not limited to:

   a. Failing to visualize suture site properly, thus suturing the left ureter, causing subsequent ureteral rupture, stuictures and permanent hydronephroiss of the left kidney.

   b. Failing to take the reasonable precautions that were necessary to properly perform surgery on PLAINTIFF, and prevent damage to the health and safety of PLAINTIFF;

   c. Failing to properly treat PLAINTIFF;

25. The surgical procedure performed by the DEFENDANTS on PLAINTIFF was reckless, wanton and performed with utter disregard for the safety and welfare of the PLAINTIFF.

26. As a direct and proximate result of the negligent acts and omissions of the DEFENDANTS, PLAINTIFF suffered physical, emotional, and psychological pain and suffering from the time of the initial surgery until the second and third surgeries and through the present time, all in an amount not presently determinable, but to be proven at the time of trial. As a further direct and proximate cause of the DEFENDANTS negligence, PLAINTIFF is now unable to support herself and depends upon the support of her family members.

27. As a further direct and proximate result of negligent acts and omissions of the DEFENDANTS, PLAINTIFF experienced mental anguish, emotional distress and pain and suffering and will continue to suffer these ailments in the future.

**SECOND CAUSE OF ACTION**

<u>**NEGLIGENT HIRING, TRAINING, AND SUPERVISION
AGAINST DEFENDANT PRESBYTERIAN HEALTHCARE SERVICES**</u>

28. PLAINTIFF incorporates by reference as fully set forth herein each and every allegation contained in Paragraphs 1 through 27 of this Complaint.

29. DEFENDANT, Northern Navajo Medical Center, had a duty to properly screen, supervise, educate, and train its employees, regarding proper treatment of patients.

30. On information and belief, DEFENDANT failed to properly train and supervise its employees, contractors, or agents in such a manner as alleged above directly caused damages to PLAINTIFF.

31. DEFENDANT is also liable for damages caused by their employees while working within the scope of their employment in an amount not presently determinable but to be proven at the time of trial.

## THIRD CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

32. PLAINTIFF incorporates by reference as fully set forth herein each and every allegation contained in paragraphs 1 through 32 of this Complaint.

33. PLAINTIFF saw, perceived or was otherwise aware of the injuries caused by the DEFENDANT, including, but not limited to:

    a. Continued pain and suffering as a result of the negligent performance of the initial surgery by the DEFENDANT.

    b. Frustration that her continued complaints of pain and suffering were not taken seriously or treated.

    c. The need for a second and third painful surgery to correct the defect in the first surgery, as caused by the DEFENDANTS negligence.

34. As a result of the actions of DEFENDANTS, PLAINTIFF suffered and continues to suffer physical and emotional injuries.

35. As a direct and proximate result of seeing, perceiving or otherwise being aware of this negligence, PLAINTIFF suffered severe emotional distress.

## FOURTH CAUSE OF ACTION

## <u>PUNTIVE DAMAGES AS TO ALL DEFENDANTS</u>

36. PLAINTIFF re-alleges paragraphs 1 through 35 of this Complaint as if set forth fully herein.

37. The acts and omission complained of in the causes of action stated above are, upon information and belief, believed to be of such an egregious nature, in reckless, wanton and total disregard to the rights of Darlene Mark, that in addition to actual damages ascertained and demonstrated by a preponderance of the evidence, that punitive damages or exemplary damages to punish and deter this type of act and omission from occurring in the future may well be appropriate.

WHEREFORE, PLAINTIFF respectfully requests judgment against DEFENDANTS for compensatory damages in an amount to be determined by this Court as adequate for pain, suffering, and injuries to Darlene Mark, and for the maximum damages plus costs incurred by the PLAINTIFF and Darlene Mark, including pre-judgment and post-judgment interest, punitive damages, and for such further relief as the Court deems just and proper.

## JURY DEMAND

PLAINTIFF exercises her right to have her claims heard by a jury.

Respectfully submitted,

SANDOVAL FIRM

_____/s/Richard Sandoval, electronically

Richard A. Sandoval
1442-D South Saint Francis Drive
Santa Fe, New Mexico 87505
Phone: (505) 795-7790
Fax: (866) 496-9638

    and

COLLINS & COLLINS

_____/s/Parrish Collins, electronically___
Parrish Collins
500 4th Street NW Suite 405
Albuquerque, New Mexico 87102
Phone: (505) 242-5958
Fax: (505) 242-5968