IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DARLENE MARK,**

    Plaintiff,

vs.

**UNITED STATES OF AMERICA,**

    Defendant.

No. 14-CV-0422-MV-KK

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Darlene Mark's Motion to Reinstate Pursuant to Rule 60(b) and for Relief of Judgment Upon Remand from the Tenth Circuit Court of Appeals [Doc. 32].[1] Defendant United States filed no response because the United States has not yet been served. The Court, having considered the Motion, brief, relevant law, and being otherwise fully informed, finds that the Motion is not well-taken and therefore will be **DENIED.**

### BACKGROUND

A relatively detailed understanding of the procedural history of this case is required to reach an appropriate disposition of the instant Motion. On May 6, 2014, Plaintiff Darlene Mark filed a Complaint in this Court against Northern Navajo Medical Center and Dr. Cynthia Lee Olson, M.D., alleging tortious conduct arising out of Plaintiff's treatment at the medical facility. *See generally* Doc. 1. However, Dr. Olson "was an employee of the United States and the medical center was under the authority of the United States Department of Health and Human

---

[1] Plaintiff filed a Second Motion to Reinstate Pursuant to Rule 60(B) and For Relief of Judgment Upon Remand From the Tenth Circuit Court of Appeals [Doc. 34] on July 25, 2016, which is identical to Plaintiff's original motion, [Doc. 32]. Accordingly, the Court's Memorandum Opinion and Order denies both motions.

1

Services" such that the only proper Defendant in this action is the United States of America. *See* Doc. 31 at 3. On July 17, 2014, approximately two months after commencing the instant suit, Plaintiff filed her Amended Complaint, in which she appropriately named only the United States as a Defendant. *See generally* Doc. 6.

Then, for nearly five months, Plaintiff took no steps to prosecute this action; as is particularly germane here, Plaintiff did not serve her Amended Complaint on the United States of America during this time. Accordingly, Magistrate Judge Garza entered an Order to Show Cause on December 12, 2014 [Doc. 8] demanding that, pursuant to Federal Rule of Civil Procedure 4(m), Plaintiff "either effect service or show good cause why Defendant United States of America has not been served on or before January 12, 2015." Doc. 8 at 1. The Order also unequivocally warned Plaintiff that "the claims against Defendant United States of America ***will be dismissed***" if Plaintiff failed to comply with the Order to Show Cause. *Id.* (emphasis added). Plaintiff took no action in response to the Court's Order to Show Cause. Consequently, on January 29, 2015, more than two weeks after the deadline set by the Order to Show Cause had passed, the Court dismissed Plaintiff's suit without prejudice. *See generally* Doc. 10.

Later that day, Plaintiff filed her Motion to Reinstate [Doc. 11], followed the next day by her Second Motion to Reinstate [Doc. 12]. The Court summarily denied both of these motions for failure to comply with Local Rule 7.1. *See generally* Doc. 13. On February 4, 2015, Plaintiff filed her corrected Second Amended Motion to Reinstate [Doc. 14]. In it, Plaintiff explained that "[d]ue to staff turnover over prior to the holidays at the end of 2014 when the Order was issued, the Order to Show Cause was not properly calendared nor was service performed" and that, therefore, "[g]ood cause exists to reinstate this complaint that was timely filed but dismissed without prejudice." Doc. 14 ¶¶ 7, 11. On February 13, 2015, the Court denied Plaintiff's

request, in large part because the Court believed that a jurisdictional bar prohibited the Court from permitting the suit to proceed.  *See* Doc. 19 at 2.  Specifically, this Court held that "perfected service on the United States of America during the limitations period is a jurisdictional requirement in every Federal Tort Claims Act ('FTCA') case."  *Id.*

In response, Plaintiff filed her Motion to Reinstate Pursuant to Rule 60(b), to Clarify Factual Errors in Court's Ruling of February 13, 2015 [Doc. 20] on February 27, 2015 and her Amended Motion to Reinstate Pursuant to Rule 60(b), to Clarify Factual Errors in Court's Ruling of February 13, 2015 and for Relief of Judgment [Doc. 21] on March 2, 2015.  Effectively, these Motions argued that "Plaintiff properly exhausted her administrative remedies prior to initiating the instant suit" and "that the United States of America was timely served because it had notice of the claim and proceeding when Plaintiff served an organ of the federal government."  Doc. 24 at 1-2.  The Court disagreed and, on March 24, 2015, entered a Memorandum Opinion and Order denying Plaintiff's Motions.  *See generally id.*

Nearly a month later, on April 21, 2015, Plaintiff filed a notice in this Court that she would appeal the Court's various decisions to the United States Court of Appeals for the Tenth Circuit.  *See generally* Doc. 25.  On January 4, 2016, the Court of Appeals transmitted its mandate to this Court, including a copy of its Order and Judgment.  In it, the panel "affirm[ed] the order of dismissal," but "vacate[d] the orders denying the post-judgment motions and remand for re-consideration in light of intervening Supreme Court precedent."  Doc. 31-1 at 2.  That is, the Tenth Circuit held that because Plaintiff "gave the district court no reason for the lack of service, much less a reason that would establish good cause," this Court "did not err in dismissing the claims without prejudice."  *Id.* at 5.  However, the panel also "vacate[d] the orders denying" Plaintiff's Rule 60(b) motions "for further consideration by the district court" because

"[a]fter the district court's decisions in this case" the "Supreme Court held that the FTCA's time limitations are not jurisdictional." *Id.* at 5–6 (citing *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1633 (2015)). Approximately one week later, Plaintiff filed the instant Motion, arguing again that she should be granted relief from judgment. *See* Doc. 32 at 1. Rather than wade into the jurisdictional waters muddied by *Wong*, the Court will instead turn to the merits of Plaintiff's Rule 60(b) request.

## DISCUSSION

### I. Federal Rule of Civil Procedure 60(b)

Federal Rule of Civil Procedure 60(b) provides that a "court may relieve a party or its legal representative from a final judgment, order, or proceeding" for six enumerated reasons, including, as are relevant here, "mistake, inadvertence, surprise, or excusable neglect," and "any other reason that justifies relief." Fed. R. Civ. P. 60(b). While this latter basis for relief is often described as a "grand reservoir of equitable power," if "the reasons offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)." *Anderson Living Tr. v. WPX Energy Prod., LLC*, 308 F.R.D. 410, 429–30 (D.N.M. 2015) (internal quotation marks omitted).

When reviewing a motion pursuant to Rule 60(b), a district court must bear in mind that "[r]elief under this rule is extraordinary and may only be granted in exceptional circumstances." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (internal quotation marks omitted). *See also Pedroza v. Lomas Auto Mall, Inc.*, 304 F.R.D. 307, 326 (D.N.M. 2014) ("Rule 60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule.") (internal quotation marks omitted). "A litigant demonstrates 'exceptional circumstances' by satisfying at least one of Rule

60(b)'s six grounds for relief." *Allender v. Raytheon Aircraft Co.*, 439 F.3d 1236, 1242 (10th Cir. 2006). Moreover, the Court is mindful that "Rule 60(b) is not a substitute for appeal, and must be considered [in conjunction] with the need for finality of judgment." *Macias v. New Mexico Dep't of Labor*, 300 F.R.D. 529, 542 (D.N.M. 2014) (internal quotation marks omitted). *See also Cummings v. Gen. Motors Corp.*, 365 F.3d 944, 955 (10th Cir. 2004) ("Parties seeking relief under Rule 60(b) have a higher hurdle to overcome because such a motion is not a substitute for an appeal."); *Kerber v. Qwest Grp. Life Ins. Plan*, 727 F. Supp. 2d 1076, 1077 (D. Colo. 2010) ("Motions to alter or amend judgment are regarded with disfavor.").

The instant case solely raises questions of "mistake, inadvertence, surprise, or excusable neglect" pursuant to Rule 60(b)(1). The Supreme Court has explained that "for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993). "With regard to determining whether a party's neglect of a deadline is excusable," district courts should take "account of all relevant circumstances surrounding the party's omission." *Id.* at 395. "Relevant factors include the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Jennings v. Rivers*, 394 F.3d 850, 857 (10th Cir. 2005) (internal quotation marks omitted). The Tenth Circuit has stated that "fault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable." *Id.* at 856–57 (quoting *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) (analyzing the excusable neglect standard in the context of Federal Rule of Appellate Procedure 4(b)(4), where the party filed an untimely notice of appeal)).

The movant bears the burden of demonstrating the existence of excusable neglect that would entitle her to relief. *See, e.g.*, *Culbertson v. Holder*, No. 12–2734–EFM–DJW, 2014 WL 3845129, at *2 (D. Kan. Aug. 5, 2014) ("The party making the motion has the burden of pleading and proving excusable neglect."). *See also Schnuelle v. C & C Auto Sales, Inc.*, 196 F.R.D. 395, 397 (D. Kan. 2000) ("The burden falls upon the party moving to have the judgment set aside to both plead and prove mistake, inadvertence, surprise, or excusable neglect.") (internal quotation marks omitted).

**II.     The Instant Case**

    A.  *This Court properly dismissed Plaintiff's case.*

Contrary to Plaintiff's assumption, the factors described in *Ehrenhaus v. Reynolds* are inapposite here. *See, e.g.*, Doc. 32 at 2. As the Tenth Circuit explained in its opinion in this matter, the "dismissal was without prejudice, and [w]hen dismissing a case without prejudice, a district court may, without abusing its discretion, enter such an order without attention to any particular procedures." Doc. 31-1 at 4 (internal quotation marks omitted). Moreover, the *Ehrenhaus* factors only guide a district court's discretion to dismiss a case as a sanction, not in any other circumstances. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) ("Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors…") (emphasis added).

Here, Plaintiff's civil action was dismissed not as a discretionary sanction, but rather at the direction of Federal Rule of Civil Procedure 4(m), which provides that "[i]f defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—***must*** dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m) (emphasis added). Indeed, the

Court offered Plaintiff additional time during which to serve the United States; in the Order to Show Cause, Magistrate Judge Garza ordered on December 12, 2014 that Plaintiff serve the United States by January 12, 2015, thus providing Plaintiff with an additional month during which to perfect service or explain the reason for her failure to do so. *See* Doc. 8 at 2. Only when Plaintiff failed to meet this extended deadline did the Court dismiss Plaintiff's case, as provided for in Rule 4(m). *See generally* Doc. 10. Whatever Plaintiff's opinion of the Court's decision, the Tenth Circuit has already affirmed this Court's dismissal of her claims pursuant to Rule 4(m). *See* Doc. 31-1 at 5 ("In these circumstances, the district court did not err in dismissing the claims without prejudice."). Accordingly, the propriety of the Court's dismissal of Plaintiff's suit for failure to serve the United States is no longer at issue in this case and, as such, *Ehrenhaus* is inapposite.

  B. *Plaintiff cannot state a basis for relief under Rule 60(b)(1).*

Rather, this case is now governed by Rule 60(b)(1), such that the sole question is whether Plaintiff is entitled to relief from the Court's judgment because of mistake or excusable neglect. Regrettably, the Court is forced to conclude that she is not. Under *Jennings*, courts should consider all relevant factors in determining whether the neglect was excusable, including "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Jennings*, 394 F.3d at 857. The Court considers each factor in turn and finds that because the delay was extensive and exclusively within Plaintiff's control, Plaintiff's neglect is not excusable.

First, regarding the length of the delay, even assuming that the United States has not been prejudiced by the delay, the initial delay at issue spanned approximately five months and has

7

interrupted the instant proceedings.  *See, e.g.*, *Segura v. Workman*, 351 F. App'x 296, 299 (10th Cir. 2009) (affirming denial of Rule 60(b) motion where district court found that seven month delay was not attributable to excusable neglect); *Baldauf v. Hyatt*, No. 01–cv–01315–REB–CBS, 2008 WL 961572, at *2 (D. Colo. April 8, 2008) (noting that a "nearly six week[]" delay "is not the stuff of excusable neglect."); *Stockmar v. Colo. Sch. of Traditional Chinese Med., Inc.*, No. 13–cv–02906–CMA–MJW, 2015 WL 5444309, at *3 (D. Colo. Sept. 16, 2015) ("the Court need not decide whether it was excusable for Mr. McNamara to rely to such an extreme extent on his paralegal, because it can definitively say that [counsel's] failure to rectify his mistake for **almost four months** before the Court granted the Attorney Fees Motion was not 'excusable neglect.'") (emphasis original).

Indeed, here, Plaintiff's negligence caused delays exceeding five months.  First, the Court provided Plaintiff with an additional month after the Order to Show Cause during which to remedy the procedural defect, which brings the total delay between the filing of the Amended Complaint and dismissal of Plaintiff's suit to approximately six months.  *See generally* Docs. 8, 10.  Second, counting the delay as approximately six months ignores the additional year that has been devoted to litigating Plaintiff's various Rule 60(b) motions and appeal; this, in turn, has required the Court to devote significant resources to address Plaintiff's myriad filings.  *See Zia Hospice, Inc. v. Sebelius*, No. CV 09–0055 CG/LFG2010, WL 3984741, at *4 (D.N.M. Aug. 20, 2010) ("Second, the length of delay was about two months, which at first blush, may not seem unreasonable, but the delay has necessitated the instant Motion, its briefing, and the Court's resources in addressing it.").

Regarding the reason for the delay, although there is no indication of bad faith, the delay was entirely within Plaintiff's control.  Plaintiff's explanations for failing to serve the United

States and for failing to respond to the Court's Order to Show Cause fail to justify relief because they are insufficiently substantiated and fail to apprehend the affirmative duty of attorneys to monitor their cases.  First, Plaintiff's sole explanation for not timely serving the United States is that her attorney's "[f]ormer paralegal Cheryl Schultz informed [counsel] the Amended Complaint against the United States was out for service" and that "[i]n retrospect, Ms. Shultz may have believed the United States was served by virtue of the United States Attorney's office being aware of the proceedings and the U.S. Attorney's Office requesting the amendment [of the Complaint]."  Doc. 32 at 4.  As an initial matter, Plaintiff's contention that a paralegal misinformed her attorney is supported only by a self-serving affidavit sworn out by Plaintiff's counsel.  *See* Doc. 32 at 4 (citing "Affidavit of Richard Sandoval, attached at Exhibit X to X [sic]").  *See also id.* at 5 (citing to the "Affidavits of Richard A. Sandoval and Michelle Encinias attached to the Second Amended Motion to Reinstate filed on February 4, 2015 (Doc. 14)" ***however*** the affidavit from Sandoval is separately filed as Doc. 17, not included in Doc. 14).  The Court is compelled to view such evidence skeptically, particularly given that the Affidavit solely states that "in 2014" the paralegal "informed me that the Amended Complaint in this matter had been served on the United States of America," without any additional detail regarding when this may have happened or what evidence, such as a return receipt, the paralegal might have provided to Plaintiff's counsel.  Doc. 17 ¶ 4.

Moreover, even if this Court were to believe that a paralegal told Plaintiff's counsel that "the Amended Complaint against the United States was out for service," counsel does not explain why he ignored this case for five months and did not investigate when he did not receive any written confirmation that service had been completed.  That is, Plaintiff's explanation fails ***both*** because attorneys themselves are responsible for the management of their cases ***and***

because no amount of reliance on a paralegal's unsupported representation that a document was "out for service" would justify failing to monitor a case for approximately five months, particularly when no confirmation of service, or, indeed, an answer from the United States, materialized. Thus, these circumstances do not warrant relief from judgment pursuant to Rule 60(b).

Second, Plaintiff attempts to justify her failure to respond to the Court's Order to Show Cause by insisting that "[t]hrough an innocent mistake, and due to a staff issue that Plaintiff's counsel dealt with promptly and to the best of his ability, the [Order to Show Cause] was not calendared by Plaintiff's counsel's office and the deadline of January 12, 2015, was missed." Doc. 32 at 6–7. This explanation is unavailing for the same reasons described above; it is an attorney's responsibility to monitor the Court's docket and staff errors simply cannot explain ignoring the case for several months.

Had counsel merely checked the docket, ensured that the United States had been served, or otherwise prosecuted this case, this Court would not have dismissed the action. *See Torres*, 372 F.3d at 1163 ("fault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable.") (internal quotation marks omitted). This is true even where, as here, an attorney may have delegated certain tasks to subordinates; attorneys, not their paralegals or assistants, have an affirmative duty to monitor the status of their cases. *See Pace v. United Services Auto. Assoc.*, No. 05–cv–01562–LTB–MJW, 2007 WL 2022059, at *4 (D. Colo. July 9, 2007) ("Furthermore, it is counsels' responsibility to monitor the progress of their cases and the court's docket."); *Brown v. Zarek*, No. 98–5097, 1998 WL 738340, at *1 (10th Cir. Oct. 22, 1998) ("It is the litigant's affirmative duty to monitor the court's docket."). *See also Yeschick v. Mineta*, 675 F.3d 622, 629 (6th Cir. 2012) ("We have

previously found that parties have an affirmative duty to monitor the dockets to keep apprised of the entry of orders that they may wish to appeal."); *Simmons v. Milegon, LLC*, No. 3:15–cv–00790–HZ, 2015 WL 9255545, at *2 (D. Or. Dec. 18, 2015) ("Plaintiff's counsel's malfunctioning email is not a basis for finding excusable neglect."). *Cf. In re Loomas*, BAP No. CO–13–017, 2013 WL 5615943, at *4 (B.A.P. 10th Cir. Oct. 15, 2013) ("In addition to Rule 9022, courts have repeatedly held that failure to receive notice of the entry of a judgment is not a defense to an untimely appeal because litigants 'have an affirmative duty to monitor the dockets to keep apprised of the entry of orders that they may wish to appeal.'") (quoting *Yeschick*).

Regarding the issue of whether Plaintiff acted in good faith, the Court acknowledges that although Plaintiff's explanation for the delay fails to sufficiently establish a good faith effort to prosecute this case, there is no indication that Plaintiff acted in bad faith. In short, Plaintiff's explanation does not suggest that her neglect was intentional. Nevertheless, the Court is reluctant to find that the absence of bad faith would be sufficient to outweigh Plaintiff's neglect of this case for several months.

Thus, taking all of the *Jennings* factors into account, although there is no indication that Plaintiff's neglect was intentional or that Defendant has been necessarily prejudiced by the delay, the approximately 6 months of disruption in these proceedings, due entirely to circumstances within Plaintiff's control, is inexcusable. Plaintiff, through her counsel, had an affirmative duty **both** to prosecute this case in a prompt manner, including by timely serving the United States **and** to respond appropriately to the Court's Order to Show Cause. Plaintiff's failure to do so, particularly her decision to ignore this case entirely for *five months* after filing her Amended Complaint is not the sort of neglect that is cognizable under Rule 60(b).

Moreover, contrary to counsel's insistence to the contrary, it is of no moment that Plaintiff bears the burden of her attorney's negligence. *See, e.g.*, *Gripe v. City of Enid, Okla.*, 312 F.3d 1184, 1189 (10th Cir. 2002) ("Plaintiff argues against the harshness of penalizing him for his attorney's conduct. But there is nothing novel here. Those who act through agents are customarily bound by their agents' mistakes. It is no different when the agent is an attorney."). While the Court has sympathy for Plaintiff's circumstances, the Court will not employ the extraordinary remedy provided by Rule 60(b) in this case. *See, e.g.*, *Felts v. Accredited Collection Agency, Inc.*, 406 F. App'x 309, 311–12 (10th Cir. 2011) ("Relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances.").

## CONCLUSION

The Court is frustrated by the conclusion to which the law ineluctably leads. This appears to be a circumstance in which Plaintiff, who may well have suffered harm that ought to be remedied by the law, will be unable to avail herself of the judicial system because of procedural errors and this Court's limited capacity to forgive them. While the Court expresses its profound sympathy for Ms. Mark, ultimately, the Court must apply the law impartially to everyone before it. Accordingly, the Court hopes that this Memorandum Opinion and Order will bring finality to this case.

**IT IS THEREFORE ORDERED** that Plaintiff Darlene Mark's Motion to Reinstate Pursuant to Rule 60(b) and for Relief of Judgment Upon Remand from the Tenth Circuit Court of Appeals [Doc. 32] is **DENIED.**

Dated this 20th day of September, 2016.

_____
**MARTHA VÁZQUEZ**
UNITED STATES DISTRICT JUDGE

Richard A. Sandoval, *et al.*,
**The Law Office of Richard A. Sandoval**
*Attorneys for Plaintiff*          *Defendant has not been served*